## UNITED STATES DISTRICT COURT
## DISTRICT OF DELAWARE

|  |  |
|---|---|
| In re: ) | |
| ) | |
| DIAMONDHEAD CASINO CORPORATION ) | Chapter 7 |
| ) | Case No. 24-11354 (JKS) |
| Alleged Debtor. ) | |
| ) | |
| DIAMONDHEAD CASINO CORPORATION ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | |
| ) | Case No. 1:25-cv-1018-MN |
| ) | |
| EDSON ARNEAULT, et al., ) | |
| ) | |
| Appellees. ) | |
| ) | |
| EUROPA CRUISES CORPORATION ) | |
| STOCK OWNERSHIP PLAN, ) | |
| ) | |
| Appellant, ) | |
| v. ) | Case No. 1:25-cv-1021-MN |
| ) | |
| EDSON ARNEAULT, et al., ) | |
| ) | |
| Appellees. ) | |
| ) | |
| DEBORAH A. VITALE ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | Case No. 1:25-cv-1022-MN |
| ) | |
| EDSON ARNEAULT, et al., ) | |
| ) | |
| Appellees. ) | |

**REPLY BRIEF
IN SUPPORT OF EMERGENCY MOTION FOR STAY PENDING APPEAL
OF APPELLANT, DIAMONDHEAD CASINO CORPORATION**

                        **BIGGS & BATTAGLIA**
                        Robert D. Goldberg
                        921 N. Orange Street
                        Wilmington, DE  19899-1489
                        Telephone: (302) 655-9677
                        email: Goldberg@batlaw.com
                        *Attorney for Diamondhead Casino Corporation*

Dated: October 17, 2025

## THE NEED FOR A STAY PENDING APPEAL IS URGENT

The Appellee concedes that the Debtor has no business operations that need to be liquidated or terminated. It admits that the Debtor "is a holding company, whose most valuable asset is its interest in its wholly owned subsidiary, Mississippi Gaming Corporation ("MGC"), [which] owns approximately 400 acres of undeveloped land located on Interstate 10 in Diamondhead, Mississippi (the "Property"). On August 21, 2014, the Mississippi Gaming Commission granted Gaming Site Approval to MGC for a 50-acre gaming site on the east end of the Property" [D.I. 12, ¶28].

The Appellees make no attempt to suggest that an immediate sale of the Diamondhead Property is required. The Property has continued to significantly appreciate over the years and there is nothing to suggest that it would suffer *any* deterioration in asset value that would justify the denial of a stay pending appeal. There is nothing of an emergent nature in this case that requires a quick sale of the Diamondhead Property. On the other hand, the need for a stay pending appeal is urgent.

On October 7, 2025, the Trustee in the Bankruptcy Court filed a motion to schedule an auction of the Diamondhead Property, with a January 7, 2025, bid deadline. The Trustee's filing also calls for the Trustee to obtain permission to retain <u>Colliers International</u> for this purpose. The Trustee's recent motion only underscores the Debtor's contention that the trial court erred in failing to allow the Debtor to convert the case to Chapter 11, so as to continue to do what it was already doing to sell or monetize the Property. The Debtor argued that it had retained <u>Colliers International</u> to do everything a Trustee could do to sell or otherwise monetize the Property so as to get the Petitioners paid as quickly as possible. Ironically, the Chapter 7 Trustee now seeks to retain the

same company which had just begun to market the Property for sale when the Chapter 7 Petition was filed. In short, we are back where we were on June 12, 2024 when the Petition was filed.

Thus, the Chapter 7 has done nothing to maximize the value of the estate. On the contrary, it will succeed only in adding duplicative commissions, legal fees and substantial administrative costs to the process that had just gotten underway with Colliers International when the Petition was filed. Instead of maximizing the value of the Property, it will only diminish the value of the estate's primary asset by converting an arms' length sale into a Chapter 7 distress auction. Thus, the Debtor's likelihood of success on the merits of this appeal is underscored by the fact that the Trustee is doing what the Debtor was already doing, but without the taint of a Chapter 7 liquidation hanging over the sale.

### *Arneault, et al. v. Diamondhead Casino Corporation* (In the United States District Court for the District of Delaware)(C.A. No. 1:16-cv-00989-LPS).

As the movant stated in its opening brief, the "Debtor accused counsel for Petitioners and the Petitioners of perpetrating a fraud on two courts-the Bankruptcy Court and *this* Court. In both Courts, the Plaintiff/Petitioners represented to the Court that they held debentures which they did not hold. In both Courts the Plaintiff/Petitioners represented to the Court that certain documents were attached as exhibits to sworn Declarations when the referenced documents did not even exist." [D.I. 9, ¶85] The Appellees do not deny this. They make no attempt to explain how exhibits, which never even existed, are alleged to have been attached to sworn Declarations in two courts.

As the movant stated in its opening brief, "counsel for the Plaintiffs and Plaintiffs perpetrated a fraud on *this* Court by deliberately excluding the real party in interest, Millenium Trust Company, LLC, Custodian FBO: J. Steven Emerson Roth IRA, as a plaintiff in the above-referenced case, so as to fabricate jurisdiction in this Court. The presence of the real party in interest, an LLC, would have destroyed complete diversity of citizenship in this Court, rendering

any judgment obtained *void ab initio*. The Petitioners then used the judgment improperly obtained in *this* Court as a basis for filing a Petition in the Bankruptcy Court. In addition, in *this* Court, Plaintiffs falsely represented to this Court that an assignment existed from the Millenium Trust Company, LLC, when no such assignment existed. Indeed, they falsely claimed that a copy of the assignment was actually attached to a sworn Declaration filed with *this* Court when no such assignment was attached or even existed." [D.I. 9, ¶¶87-88]. The Appellees, understandably, made no attempt to address this accusation.

The movant informed this Court, in its opening brief, that "[t]he fraud on this Court occurred in *Arneault, et al. v. Diamondhead Casino Corporation* (In the United States District Court for the District of Delaware)(C.A. No. 1:16-cv-00989-LPS)"(hereinafter "the District Court Case"). and that "[t]he Debtor will be filing a motion to reopen this case, vacate judgment, and dismiss the action for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 60(b)(4) and based on a fraud on the Court under Rule 60(d)(3). [D.I. 9, ¶86]. That motion was filed in this Court in the above-referenced case on October 15, 2025.

The outcome of the motion filed in the above-referenced case will determine whether the judgment on which the Petitioners relied in filing their Bankruptcy Petition was void *ab initio*. If so, the Bankruptcy Petition rests on a void judgment and, accordingly, must be dismissed.

## I.   THE APPELLEES PROCEDURAL COMPLAINTS ARE UNFOUNDED

The Appellees assert that the movant has failed to comply with Bankruptcy Rule 8007(b)(3)(B) and (C). The movant respectfully disagrees. The movant's motion, brief filed in support thereof, and exhibits filed in support thereof, track the requirements of Rule 8007.

The Appellees claim that "[h]ere, the Debtor has failed to comply with Rule 8007(b)(3)(B) by failing to include any affidavit or other sworn statement supporting the facts subject to

dispute." [D.I. 12, ¶59]. The assertion is incorrect. The Declaration of Deborah Vitale is attached as Attachment 1 to Appellant's Brief [D.I. 9, Attachment 1].

The Appellees also claim that the movant failed to include "relevant parts of the record" as required by Rule 8007. However, the following relevant parts of the record were attached as Exhibits. [D.I. 9, Attachment 1].

A) First Demand for Payment dated August 17, 2016, on behalf of Millenium Trust Company, LLC and others
B) Second Demand for Payment dated February 12, 2018 on behalf of Millenium Trust Company, LLC and others
C) Millenium Trust Company, LLC First Tranche Debenture
D) Millenium Trust Company, LLC Second Tranche Debenture
E) April 16, 2025: Debtor's first request for a copy of the Assignment
F) May 1, 2025: Debtor's second request for a copy of the Assignment
  Declaration of Deborah A. Vitale

Attachment 2:
Bankruptcy Court Transcript dated 9-3-25 [D.I. 9, Attachment 2].

The Appellees also incorrectly assert that the Appellant has somehow waived its ability to raise certain issues. [D.I. 12, p.2, note 2] The contention makes no chronological sense. The Debtor filed its Notice of Appeal and a Motion for a Stay Pending Appeal on August 13, 2025. Its Statement of Issues on Appeal was not due until August 27, 2025. On September 3, 2025, the Court heard argument on the motion for a stay, during which counsel for the Petitioners admitted that there was no Assignment of debentures to the largest Petitioner in the Bankruptcy case. On September 4, 2025, the lower court issued an Order denying the Debtor's motion for a stay as well as all of its other then-pending motions, which were scheduled to be argued on October 7, 2025. On September 18, 2025, the Debtor filed an Amended and Supplemental Statement of Issues on Appeal. Thus, many of the issues raised on appeal to this Court and identified in the Motion for a Stay in this Court, relate to the Bankruptcy Court's September 4, 2025 rulings which did not exist when the Motion for a Stay was filed in the lower court on August 13, 2025. The

most important issue on appeal in this case, and in support of the motion for a stay, arises from counsel's admission made on <u>September 3, 2025,</u> during oral argument in the Bankruptcy Court.

The trial court issued its Order for Chapter 7 relief on July 30, 2025. On August 1, 2025, the Court appointed an interim trustee. The Trustee introduced himself to Debtor's counsel on or about August 6, 2025, but he was deciding whether or not to accept the case, and the Company only had fourteen days to file the appeal to protect the rights of the company. [Bankr. D.I. 85, TR. 9-3-25, at pp. 8-9]. On August 12, 2025, the Trustee informed the President of the Company and its auditors that he had not yet retained counsel to represent the Trustee. However, the Notice of Appeal was due the next day. If the Appellees are correct, the Debtor's right to an appeal would be lost forever because the Trustee did not have time to retain counsel in time to review the record below and file an appeal**.**

**THE APPELLEES' CONTENTION THAT THE DEBTOR CANNOT SATISFY "ANY" OF THE *REVEL* FACTORS IS UNFOUNDED**

    **I.    THE DEBTOR HAS MADE A STRONG SHOWING OF LIKELIHOOD OF SUCCESS ON THE MERITS**

The Appellees contend that it is unlikely that the Debtor or Vitale would succeed on the merits. [D.I. 12, ¶70] This factor relates to the likelihood that the Debtor would prevail on appeal on the merits. The issues on appeal have yet to even be briefed. Many of these issues are precedent-setting and require full briefing and consideration.

The Petitioners perpetrated a fraud on the Bankruptcy Court by claiming that the largest Petitioner therein, *J. Steven Emerson, as Successor to the Steven Emerson Roth IRA*, held two debentures. The unrebutted evidence, based on Petitioners' own exhibits filed with the Bankruptcy Court, established that the largest Petitioner in the case, was not a debenture holder and that the debentures claimed were held by the Millenium Trust Company, LLC.

The Petitioners' fraud on the Bankruptcy Court did not end with the initial filing of the Petition. After the Debtor filed a Motion to Dismiss the Petition [Bankr. D.I. 9]], the Petitioners filed an Answering Brief. [Bankr. D.I. 11]. Instead of correcting their initial fraud, they committed another one. They submitted the Declaration of the Petitioner Arneault, falsely claiming that each Petitioner had a debenture and the debentures, including the non-existent debentures, were attached as Exhibit B to the Arneault Declaration. [Bankr. D.I. 12]. Apparently, two frauds were not enough.

Incredibly, in their Omnibus Objection, filed on August 28, 2025, the Petitioners again claim that each of the Petitioners are holders of debentures. [Bankr. D.I. 77, p.5, ¶18]("The Petitioning Creditors, **including the IRA**, are **each holders** of collateralized convertible senior debentures…")(Emphasis added). The IRA was not a Petitioning Creditor. Nor did it own a debenture.

The misrepresentations continue in this Court. At this point, there can be no excuse for these continuing false statements of fact. In par. 72 of its opposition brief filed herein, counsel argues that the "Debtor has waived any right to assert any issues unrelated to the validity of the **IRA's standing as a Petitioning Creditor** as part of this Motion." (Emphasis added.)[D.I. 12] The Debtor never took issue with the IRA's standing in the Bankruptcy Court because the IRA was not even a Petitioner in the Bankruptcy Court! The Debtor took issue with the validity of the individual Petitioner in the Bankruptcy case, named *J. Steven Emerson as Successor to the Steven Emerson Roth IRA.*

As they did below, the Petitioners are simply changing names to confuse the Court. The Petitioner in the Bankruptcy case was an individual, not an IRA. The IRA was a Plaintiff in the District Court case, but was not named as a party in the Bankruptcy case. Nevertheless, counsel succeeded in convincing the Bankruptcy Court that the Petitioner in the Bankruptcy Court was *the IRA,* when it was not. Hopefully, counsel will not be successful in doing so here.

Appellees did this because the IRA was a Plaintiff in the District Court case. Therefore, Appellees could claim that the IRA had a judgment against the Debtor from the federal court. The Bankruptcy Court was totally misled by this bait and switch as is apparent from the transcript of the hearing of September 3, 2025. Indeed, as the transcript confirms, the trial court thought it was dealing with the J. Steven Emerson Roth IRA and some scrivener's error or some infirmity in the name. In fact, the largest Petitioner named in the Bankruptcy case was an <u>individual</u>, which had no judgment from the federal court as claimed by Petitioners, had no debentures as claimed by Petitioners, and was not an assignee of any debentures. Otherwise put, the largest named Petitioner filed a false claim in the Bankruptcy Court for approximately $800,000.

Appellees have posed the ultimate question pertinent here in their opposition. They state: "[a]s such, the Motion does not explain how, even if successful on this issue-which is unlikely-the success would change the outcome of the Bankruptcy Court's dismissal of the Debtor's motion to dismiss the involuntary bankruptcy." [D.I. 12, ¶81] The Bankruptcy Court is a court of equity. A Bankruptcy Petition must be filed in good faith and with clean hands. Any contention that the Petitioners came into the Bankruptcy Court with clean hands has been laid to rest. A Petition filed in bad faith, based on a claim that never existed, must be dismissed.

Moreover, the Petitioners based their claims on a Judgment obtained by fabricating jurisdiction in a Court that otherwise lacked subject matter jurisdiction. That judgment is void *ab initio* and must be dismissed. Likewise, a Petition based on a void Judgment must be dismissed.

## II. THE APPELLEES CLAIM THAT THE DEBTOR WILL <u>NOT</u> BE IRREPARABLY HARMED IF A STAY IS NOT GRANTED IS UNFOUNDED

The Appellees claim that the Debtor has not put forth a non-speculative harm if the stay is not granted. The Debtor is a publicly-traded company. The diminution of its share price to virtually nothing is hardly speculative. The loss of approximately $ .25 per share on millions of shares of

7

publicly-traded stock is a non-speculative harm that has already occurred. This Court may take judicial notice of the price of the common stock on June 11, 2024 prior to the date of the filing of the Petition and the current price of the Debtor's common stock which is now worthless.

The Appellee argues that "[t]he *possibility* that an appeal may become moot does not alone constitute irreparable harm for purposes of obtaining a stay." (Emphasis added.)[D.I. 12, ¶88] However, we are not dealing with the "possibility" that an appeal may become moot here. In this case, the certain reality is that the Debtor's primary asset will be auctioned off. Once sold, it cannot be recovered.

### III. THE APPELLEES HAVE FAILED TO DEMONTRATE THAT A STAY PENDING APPEAL WILL SUBSTANTIALLY INJURE OTHER PARTIES

The Appellees claim that a stay would merely delay the inevitable sale of the Diamondhead Property and that "[a]t the same time, interest would continue to accrue on amounts owed to all Debenture holders and holders of other liens." [D.I. 12, p. 21] In short, the Appellees admit that there would be no substantial harm to creditors pending an appeal, since interest would continue to accrue on their debt. As the trial court put it: "Its been 20 years, what is another year?" Bankr. [D.I. 9, Bankr. TR. 9-3-25, p. 24] The Appellees have a first lien on the Diamondhead Property. They are in no danger of not getting paid.

The debenture holders are all accredited investors, who warranted that they could withstand the loss of their entire investment and warranted that they could hold their debentures indefinitely. Therefore, the risk of delay was a known risk of the investment which the Petitioners assumed. The delay in obtaining payment, while earning eight percent (8%) interest on their debt, stands in stark contrast to the irreparable harm that will befall the Debtor in the absence of a stay.

### IV. THE APPELLEES FAILED TO EVEN ADDRESS THE MOVANT'S REASONS WHY A STAY IS IN THE PUBLIC INTEREST IN THIS PARTICULAR CASE

The Appellees state that a stay would be in the public interest to preserve the ability of creditors to obtain repayment of their debts, "including the judgments which precipitated the case." [D.I. 12,¶ 95] Petitioners argued below that they were justified in filing a bankruptcy petition and were not using the Bankruptcy Court as a collection agency because "they've got a judgment against Diamondhead so, there's no prohibition for them operating under that, including Diamondhead Casino Corporation, into bankruptcy." [Bankr. D.I. 36, TR 1-16-25, at pp. 112-113]. However, a stay in this case is warranted precisely because "the judgment which precipitated this case" and on which the Petitioners relied, was procured by perpetrating a fraud on this Court and is void *ab initio*.

In addition, using the Judgment, the Petitioners then claimed that each of the Petitioners in the Bankruptcy case had a Consent Judgment. The contention was false. The largest Petitioner was not even a Plaintiff in the case in which the Judgment was rendered. Now, thanks to the Petitioners' false representations, the Bankruptcy Court has issued findings of fact which are clearly erroneous and easily disproven by simply checking the District Court's docket sheet.

Petitioners herein expressly represented to this Court in the earlier case that an Assignment of debentures existed from the real party in interest, an LLC, Millenium Trust Company, LLC to J. Steven Emerson. As we now know, no such Assignment existed. The Plaintiffs excluded the real party in interest from the case, because its inclusion would have destroyed complete diversity. They then used the Judgment improperly obtained in this Court to file their bankruptcy petition.

The Petitioners blame the Debtor for not detecting their fraud on the Bankruptcy Court sooner and proceeding as if an Assignment existed. In retrospect, everything is clear now. However, at the time, the notion that two law firms and four lawyers would represent that an

Assignment existed and was attached as an exhibit to a Declaration filed in a federal case, when no such Assignment even existed, simply never occurred to the undersigned.

The parties in a case cannot confer jurisdiction on a federal Court which has no subject matter jurisdiction when a Complaint is filed. They cannot do this by agreement, or deliberately, inadvertently, or through their negligence. There is nothing the Debtor did or failed to do which could confer jurisdiction on a federal Court that lacked subject matter jurisdiction when the Complaint was filed therein. The Appellant's attached payoff letters as exhibits to their brief that were prepared in 2023, seven years *after* their fraud on the District Court, to apparently excuse their fraud on the Court in 2016! This apparent attempt to somehow substitute payoff letters prepared in 2023 for an Assignment that never existed, is legally and ethically untenable.

Counsel for Appellees claims that the Debtor is accruing $400,000 in additional liabilities every three months. Counsel's reading of a Form 10-Q in a vacuum ignores the realities of a public company's filing requirements under Generally Accepted Accounting Principles (GAAP) which require that all potential debt and interest due thereon be fully reported, even uncollectible debt and contingent liabilities which may never be paid. As Ms. Vitale, testified in the lower court, and as she reiterated in her Declaration filed in support of the motion for a stay below, the Company, which had been in business for decades, was in the process of removing old debt from its books and records. As Ms. Vitale, an attorney, testified, a substantial portion of the Company's debt and the significant interest accruing thereon was uncollectible due to the expiration of applicable statutes of limitations. As counsel for Appellees knows, based on the Declaration filed by Ms. Vitale in support of the Company's motion for a stay below, due to Ms. Vitale's efforts, the

Company's debt has actually substantially decreased by $2,392,929.[1] As a result, the Company actually reported a gain of $1,820,869, as reflected in its Form 10-Q filed with the SEC for the quarter ending <u>March 31, 2025</u>. (See Diamondhead Casino Corporation, Form 10-Q for March 31, 2025, page 9, Note 5).[Vitale Declaration, Bankr. D.I. 47-1, pp.3-4, ¶¶11-15] Ironically, a Company that has not reported a gain in decades now finds itself in liquidation.

**Inasmuch as the Trustee Controls the Debtor's Finances, a Bond is Not Warranted**

There is no danger here that the Debtor can possibly do anything to harm the Company's assets inasmuch as the Trustee has taken total control of the Debtor's funds and finances. The Debtor is not in a position to spend any funds or incur any debt. Thus, a bond would be wholly unwarranted.

## CONCLUSION

For the foregoing reasons, the Debtor respectfully requests that the Court enter an Order:

(i)  Granting a stay of the Bankruptcy Court's Order for Relief in an Involuntary Case dated July 31, 2025 [Docket No. 45] pending resolution of this appeal; and

(ii) Granting such other relief as the Court deems just and proper.

Dated: October 17, 2025

Respectfully submitted,

BIGGS & BATTAGLIA
/s/ <u>Robert D. Goldberg</u>
Robert D. Goldberg (Delaware Bar ID #631)
921 N. Orange Street
Wilmington, DE  19899-1489
Telephone: (302) 655-9677
email: Goldberg@batlaw.com
*Attorney for Diamondhead Casino Corporation*

---

[1] This reduction was the equivalent of approximately eight years of Ms. Vitale's salary, which with the exception of one paycheck in about ten years, was not even being paid, but accrued.

12

## CERTIFICATE OF SERVICE

I hereby certify that a true and correct copy of the foregoing was electronically served this 17th day of October, 2025, on the following:


Jonathan M. Stemerman, Esquire
Armstrong Teasdale, LLP
1007 N. Market Street, 3rd Floor
Wilmington, DE 19801

Bradford J. Sandler
Pachulski Stang Ziehl & Jones
919 North Market Street, 17th Floor
Wilmington, DE 19801

Deborah A. Vitale
1013 Princess Street
Alexandria, VA 22314


                                                /s/ Robert D. Goldberg
                                                Robert D. Goldberg